**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Rhonda McMillan, | ) | |
|             Plaintiff, | ) ) ) | Case No. 21-cv-0836 |
| v. | ) ) | Judge Joan B. Gottschall |
| Walmart Inc., | ) ) | |
|             Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rhonda McMillan filed this negligence suit in Illinois state court against Walmart Inc. ("Walmart"), after she slipped on moisture and fell as she was leaving one of defendant's stores located in Chicago at approximately 7:20 p.m. on February 2, 2019. *See* Resp. to Def.'s Stmt. of Material Facts ("RSOF") ¶¶ 5, 7, 10–12, ECF No. 70; Compl. ¶¶ 1, 7, ECF No. 1-3.[1] Walmart removed the case to federal court based on diversity jurisdiction, and the parties conducted discovery. Notice of Removal, ECF No. 1; 28 U.S.C. § 1332(a)(1). Walmart now moves for summary judgment under Illinois's natural accumulation rule that landowners generally owe business invitees like McMillan no duty to remove natural accumulations of snow and ice. *Murphy-Hylton v. Lieberman Mgmt. Servs., Inc.*, 2016 IL 120394, ¶ 19 (citations omitted); *Ciciora v. CCAA, Inc.*, 581 F.3d 480, 481 (7th Cir. 2009) (citations omitted). McMillan contends that genuine fact disputes exist concerning the weather on the day of her fall and whether the moisture on which she slipped was in fact a natural accumulation of water from melting snow or ice that had been tracked into the store. *See* Resp. 2–4, ECF No. 69. Because the summary judgment record demonstrates that the moisture resulted from customers tracking naturally accumulating water or snow into the store and because McMillan has produced no

---

1    An apparent paragraph numbering error crept into paragraphs 23–31 of plaintiff's response to defendant's Local Rule 56.1(a)(2) statement of material facts. Paragraphs 25–31 of the response correspond to paragraphs 24–30 of the fact statement. *See* ECF No. 70 at 4–6. Citations in this opinion use the paragraph number of defendant's fact statement. *Compare* ECF No. 63 at 3–4 *with* ECF No. 70 at 4–6.

evidence from which a jury could find that the moisture was an unnatural accumulation, the court enters summary judgment for Walmart. *See Ciciora*, 581 F.3d at 483.

## Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At summary judgment, "facts must be viewed in the light most favorable to," and all reasonable inferences from the evidence must be drawn in favor of the nonmoving party–but "only if there is a genuine dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quotation omitted); *Blasius v. Angel Auto., Inc.*, 839 F.3d 639, 644 (7th Cir. 2016) (citing *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016)). After "a properly supported motion for summary judgment is made, the adverse party must" go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 255 (quotation omitted); *see also Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013). Thus, summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

## Facts and Summary Judgment Evidence

The summary judgment evidence consists of the pleadings; McMillan's deposition transcript; the transcript of the deposition of a former assistant store manager, Princess Beck ("Beck"); a claim form concerning the accident prepared by Beck; video surveillance footage of the Walmart doors capturing McMillan's fall; and two stills from the surveillance footage. The deposition testimony and claim form shed very little light on the source of the moisture on which McMillan slipped. McMillan testified that she slipped and fell on "some substance" or "moisture," but she does not know what the substance was. RSOF ¶¶ 10–13. Nor does McMillan know how the substance came to be on the floor, how long it was on the floor, or

whether Walmart employees knew of the substance. RSOF ¶¶ 14–16. McMillan also did not see or hear other customers talking about a substance or moisture on the floor, and she did not see any objects, such as broken bottles or containers, nearby. *See* RSOF ¶¶ 17–18. All of this testimony is undisputed. RSOF ¶¶ 10–18.

The claim form states that McMillan slipped on water from melting snow and lists snow and ice as the accident's cause. RSOF ¶¶ 23–24 (citing Claim Form 1, Def.'s Ex. E, ECF No. 63-5). As McMillan argues, it is undisputed that Beck did not witness the accident or interview McMillan. Beck relied on the account of another store employee (not deposed) to prepare the claim form. *See* RSOF ¶¶ 22–23; Resp. to Pl.'s Stmt. of Add'l Material Facts ("RSAF") ¶¶ 32–37. What Beck wrote on the claim form concerning the cause of McMillan's fall is therefore textbook hearsay–an out-of-court statement of the associate introduced to prove the truth of the associate's statement. *See* Fed. R. Evid. 801(c). The claim form's statements about the cause of the accident play no part in the summary judgment analysis because "[h]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (citing *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997)).

Beck's deposition testimony aids one aspect of Walmart's case. She testified that it had snowed on either the day of the accident or the prior day. RSOF ¶ 25. McMillan contends that the weather on the day of her accident is genuinely disputed. She cites a disputed portion of her deposition transcript, which she characterizes as testimony that she "did not recall the weather on the day of the incident or the last time it snowed." *See* RSAF ¶ 39 (citing Deposition of R. McMillan ("McMillan Dep.") 86:4–8, Def.'s Ex. C, ECF No. 63-3). This testimony does not create a triable issue. "A witness's inability to recall a fact cannot be used to create a genuine dispute about it; no recollection yields no competent evidence." *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1044 (N.D. Ill. 2018) (citing *Brown v. Chi. Transit Auth. Retirement Plan*, 197 F. App'x 475, 481 (7th Cir. 2006)). Hence, Beck's testimony that it had recently snowed is not genuinely disputed. RSOF ¶ 25.

The final piece of summary judgment evidence is the most illuminating: Walmart's surveillance videos of the accident.[2] Def.'s Ex. F, ECF No. 63-6. As the Seventh Circuit has recognized in the summary judgment context, "videos are sometimes unclear, incomplete, and fairly open to varying interpretations," and choosing among those interpretations is properly a jury function. *See Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018). Nevertheless, "in rare circumstances when video footage clearly contradicts the nonmovant's claims [at summary judgment], [the court] may consider that video footage without favoring the nonmovant." *Id*. (citing *Scott, supra*, 550 U.S. at 378–81). " 'A conclusive video allows a court to know what happened and decide the legal consequences,' but a video that is ambiguous or 'not wholly clear' can be relied on only for those facts that can be established 'with confidence' and 'beyond reasonable question.' " *Smith v. Finkley*, 10 F.4th 725, 730 (7th Cir. 2021) (quoting *Johnson v. Rogers*, 944 F.3d 966, 967, 969 (7th Cir. 2019)). The parties do not argue that the testimony and video footage conflict. Indeed, McMillan reviewed the footage, identified herself, and confirmed that the footage was consistent with her memory. RSOF ¶¶ 26–27.

The surveillance videos appear to have been taken by two cameras mounted above eye level inside the store's vestibule. The interior of the vestibule, two automatic doors through which patrons enter and exit the store, and the sidewalk and parking lot are visible. The vestibule has light-brown flooring of unknown material. A dark gray (or possibly black) runner extends from outside the frame to a point before each door. The runner near the door where McMillan slipped appears to be between one-and-a-half and two feet from the threshold. The exact distance is difficult to gauge.

A sidewalk runs parallel to the store and a parking lot lies beyond. The parking lot appears to be lit from overhead, although the source of lighting cannot be determined. A large Walmart sign stands in the parking lot. *See* Reply 3, ECF No. 71. Piles of partially melted snow

---

2   Defendant's exhibit F contains two surveillance videos labelled "Exit_Grocery_01" and "Entrance_Grocery_02." This opinion refers to the first as "Video 1" and the latter as "Video 2."

surround the sign. *See id.* Patrons and employees, some pushing carts, regularly enter and exit the store, and vehicle traffic can be seen in the parking lot.

At time index 7:20:53, McMillan approaches one of the exits. The door opens. She reaches the end of the runner, steps forward with her right foot onto the floor between the runner and the door threshold, slips, and falls across the doorframe. Neither camera angle makes it possible to see clearly what caused her to slip. The record includes one hour of footage leading up to McMillan's fall. The court has reviewed all of it. No one drops or spills anything on the floor. No one slips before the accident or acts as though the vestibule floor is wet. Walmart speculates in its briefing that 14 people who came into the store in the five minutes before the accident may have tracked water from the sidewalk onto the spot where McMillan slipped. Reply 3; Video 1 at timestamp 07:15:00–07:20:53; Video 2 at timestamp 07:15:00–07:20:53. The videos are not clear enough to substantiate or refute Walmart's theory. The floor's color and texture make determining from the videos whether, or where, the vestibule's floor is wet impossible.

Consistent with Beck's testimony about recent snowfall, the sidewalk and parking lot appear to be wet. Overhead lights are reflected on the pavement throughout the videos. The head and tail lights of passing cars cast reflections on the surfaces of the sidewalk and parking lot. *See, e.g.*, Video 1 at timestamp 07:18:00–07:18:16; Video 2 at timestamp 07:07:48, 7:08:50. None of this has any of the hallmarks of an optical illusion. Shadows of passing cars and pedestrians interrupt the reflections in a natural manner. *See, e.g.*, Video 2 at timestamp 07:05:47.

McMillan nevertheless argues in conclusory fashion that a jury could find from the videos that the pavement was not wet, but she does not explain why and offers no other plausible explanation for the reflectivity of the sidewalk and pavement. *See* Resp. 3–4 (no evidence or legal authority cited). Drawing on everyday experience, no explanation other than wetness is suggested by the record. At most, McMillan raises a metaphysical doubt about interpreting the video footage. As the Supreme Court emphasized in a case concerning contested video footage

5

of a car chase, a summary judgment "opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott*, 550 U.S. at 380 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)) (alterations in original). McMillan's conclusory argument concerning the pavement's wetness does not create a triable issue.

## Analysis

Under the *Erie* doctrine,[3] a federal court sitting in diversity applies federal procedural law and state substantive law, here Illinois's law of negligence. *See Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018); *Piotrowski v. Menard, Inc.*, 842 F.3d 1035, 1038 (7th Cir. 2016). "To establish a cause of action for negligence under Illinois law, a plaintiff must prove: '(1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty; and (3) an injury proximately caused by the breach.'" *Dunn*, 880 F.3d at 906 (quoting *Wilfong v. L.J. Dodd Constr.*, 930 N.E.2d 511, 519 (Ill. App. Ct. 2d Dist. 2010)). Illinois law imposes upon landowners a duty of care to their business invitees (such as customers) "to keep their premises reasonably safe."[4] *McCarty v. Menard, Inc.*, 927 F.3d 468, 471 (7th Cir. 2019) (citing *Piotrowski,* 842 F.3d at 1038). There is no dispute that McMillan was a business invitee, for she had come to the store to send a MoneyGram and fell as she was leaving. RSOF ¶¶ 7, 10.

---

3   *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

4   In Illinois, ordinary negligence and premises liability are distinct claims with distinct elements. *See Hutson v. Pate*, 2022 IL App (4th) 210696, ¶¶ 44–46; *Gutterman v. Target Corp.*, 2016 WL 397377, at *1–2 (N.D. Ill. Feb. 2, 2016). "In effect, the difference between premises liability and ordinary liability is that in a premises liability case the defendant is alleged to have 'maintained a dangerous condition [on its land],' whereas in an ordinary liability case the defendant is alleged to have caused the dangerous condition." *Hutson*, 2022 IL App (4th) 210696, ¶ 45 (citing *Reed v. Wal-Mart Stores, Inc.*, 700 N.E.2d 212, 215 (Ill. App. Ct. 4th Dist. 1998)). The plaintiff may elect to pursue either type of claim where "a landowner's conduct in creating an unsafe condition precedes the plaintiff's injury." *Id*. ¶ 46 (citing *Smart v. City of Chicago*, 2013 IL App (1st) 120901, ¶ 54 (other citations omitted)). McMillan does not argue in her response memorandum that she is bringing a premises liability claim and cites no case law decided under a premises liability theory. Indeed, McMillan cites no case law whatsoever applying Illinois tort law. *See* ECF No. 69. McMillan's claim will therefore be analyzed as an ordinary negligence claim. The result would be the same under a premises liability theory because McMillan must establish that the defendant owed her a duty of care to sustain a premises liability claim. *See Hutson*, 2022 IL App (4th) 210696, ¶ 44.

Walmart invokes Illinois's natural accumulation rule. "In the context of liability of a landowner for a fall on snow and ice, the general rule in Illinois historically has been that under the common law, a landowner owes no duty to remove natural accumulations of snow and ice." *Murphy-Hylton v. Lieberman Mgmt. Servs., Inc.*, 2016 IL 120394, ¶ 19 (citing *Krywin v. Chi. Transit Auth.*, 938 N.E.2d 440, 447 (Ill. 2010) (other citations omitted)). As explained by the Illinois Supreme Court, "to hold otherwise would create an unreasonable burden of vigilance when considering that snowstorms cannot be foreseen or controlled and recognizes 'the climatic vagaries of this area with its unpredictable snowfalls and frequent temperature changes.' " *Murphy-Hylton*, 2016 IL 120394, ¶ 19 (quoting *Tzakis v. Dominick's Finer Foods, Inc.*, 826 N.E.2d 987, 994 (Ill. App. Ct. 1st Dist. 2005)). Consistent with this rationale, the natural accumulation rule does not dissolve at a business's door: "Illinois law . . . is well settled that property owners as well as business operators are not liable for injuries resulting from the natural accumulation of ice, snow, or water that is tracked inside the premises from the outside." *Reed v. Galaxy Holdings, Inc.*, 914 N.E.2d 632, 636 (Ill. App. Ct. 1st Dist. 2009) (citing *Branson v. R & L Inv., Inc.*, 554 N.E.2d 624, 628 (Ill. App. Ct. 1st Dist. 1990); *Clark v. Carson Pirie Scott & Co.*, 91 N.E.2d 452, 454 (Ill. App. Ct. 1st Dist. 1950)).

For example, in *Reed*, on which Walmart relies, the Illinois appellate court affirmed summary judgment against a plaintiff who slipped and fell on a puddle of water just inside the door to a laundromat. *See Reed*, 914 N.E.2d at 635–36. The summary judgment record showed that it had rained earlier that day, and the plaintiff testified that the pavement leading to the laundromat's door was wet. *Id*. at 638. The *Reed* court held that this evidence "clearly establish[ed] that the water was tracked in from the outside" and applied the natural accumulation rule. *Id*. at 639–40.

Another of Walmart's cases, *Beaumont v. J.P. Morgan Chase Bank, N.A.*, 782 F. Supp. 2d 656 (N.D. Ill. 2011), illustrates what a plaintiff must do to survive summary judgment in federal court where the natural accumulation doctrine is at issue. The plaintiff, Charlotte Beaumont, slipped on a puddle in a bank vestibule between the outer and inner doors. *See id*. at 657, 661.

7

To avoid summary judgment, she relied on her deposition testimony and that of several bank employees. *Id*. at 661. The court summed up her summary judgment evidence this way: "[N]o one saw water on the entryway floor, . . . the sidewalk outside the Bank was wet, and . . . Ms. Beaumont walked on that sidewalk before she entered the Bank, as did several customers who were already in the Bank." *Id*. The court explained that, on this record, the bank did not bear the burden to prove that there was a natural accumulation of water but rather, "The cases require that Ms. Beaumont prove that there was an *unnatural* accumulation of water that the Bank created that caused her to slip and fall." *Id*. (emphasis in original) (citing *Ciciora v. CCAA, Inc.*, 581 F.3d 480, 483 (7th Cir. 2009); *Flight v. Am. Cmty Mgmt., Inc.*, 893 N.E.2d 285, 288 (Ill. App. Ct. 1st Dist. 2008); *Eichler v. Plitt Theatres, Inc.*, 521 N.E.2d 1196, 1201 (Ill. App. Ct. 2d Dist. 1988)).

Similar to the records in *Reed* and *Beaumont*, the summary judgment evidence in the case at bar establishes that it snowed on the day of, or the day before, McMillan's accident, RSOF ¶ 25. As discussed above, the surveillance video footage clearly shows that the parking lot was wet. No unnatural source of liquid or moisture on which McMillan slipped is apparent from the videos. Rather, a steady flow of patrons and employees passes from the wet pavement of the parking lot into and out of the store. As in *Reed* and *Beaumont*, the undisputed evidence as a whole clearly establishes that the water on which McMillan slipped was a natural accumulation tracked into the store by customers and employees.

To avoid summary judgment, then, McMillan must go beyond her pleadings and produce evidence from which a jury could find "that there was an *unnatural* accumulation of water." *Beaumont*, 782 F. Supp. 2d at 662 (emphasis in original) (citations omitted). That is, McMillan must "identify the cause of [her] fall and produce evidence linking it to" the defendant's alleged negligence. *Allen v. Cam Girls, LLC*, 2017 IL App (1st) 163340, ¶ 45. McMillan has not done this.[5] She testified that she does not know how the moisture on which she slipped came to be

---

5  McMillan pleaded several additional theories of negligence in her complaint, including that Walmart
   negligently placed the floor mat near the spot where she slipped and that Walmart failed to install
   (continued on next page)

there or how long it was there. RSOF ¶¶ 14–15. McMillan has produced no other evidence shedding light on the cause of her injuries or linked them to anything Walmart did or failed to do (besides not removing naturally accumulating water).[6] *See Allen,* 2017 IL App (1st) 163340, ¶¶ 43–47; *see also Buscaglia v. United States*, 25 F.3d 530, 535 (7th Cir. 1994).

For the reasons stated, McMillan has not pointed to evidence creating a genuine fact issue for trial on whether Walmart owed her a duty of care. Walmart's motion for summary judgment is granted.

Dated: November 3, 2022

/s/
Joan B. Gottschall
United States District Judge

---

barricades and/or warning devices. *See* Compl. ¶¶ 7, 13. McMillan develops none of these theories in her summary judgment response. She has therefore waived them. They fail in any event. "Since business owners and operators are not liable for failing to remove natural accumulations of water, owners and operators also have no duty to warn of such conditions." *Reed*, 914 N.E. 2d at 636 (citing *Walker v. Chi. Transit Auth.*, 416 N.E.2d 10, 13 (Ill. App. Ct. 1st Dist. 1980)). Courts applying Illinois's natural accumulation rule have also rejected theories that the "store failed to install an adequate number of mats to remove the water" on which the plaintiff slipped because a "defendant's voluntary use of mats gave rise to no duty beyond that of maintaining the mats with 'reasonable care.'" *Ashtari v. GFS Marketplace, LLC*, 2011 WL 3348063, at *5 (N.D. Ill. Aug. 2, 2011) (quoting *Roberson v. J.C. Penney Co.*, 623 N.E.2d 364, 366 (Ill. App. Ct. 3d Dist. 1993)). No negligent maintenance of the mats is obvious from the surveillance videos. A reasonable jury could find that the mat near the spot where McMillan slipped did not directly abut the threshold, but "[t]he fact that, according to Plaintiff, the mat did not directly abut the door, or that it slipped when Plaintiff fell, is no indication that Defendants did not reasonably maintain the mats." *Id.* (granting summary judgment to store for this reason); *see also Weston v. Wal-Mart Stores, Inc.*, 301 F. App'x 538, 540 (7th Cir. 2008); *Salgado v. Costco Wholesale Corp.*, 2022 WL 114098, at *5 (N.D. Ill. Jan. 12, 2022).

6  As the Illinois Supreme Court has explained:

> Thus, liability may arise where snow or ice accumulated by artificial causes or in an unnatural way or by a defendant's own use of the area concerned and creation of the condition, and where it has been there long enough to charge the responsible party with notice and knowledge of the dangerous condition. Various theories of liability for falls on an unnatural accumulation of ice have been recognized, including (1) a defective condition or negligent maintenance of the premises and (2) a voluntary undertaking theory.

*Murphy-Hylton*, 2016 IL 120394, ¶¶ 20–21 (paragraph break, internal citations, and quotation omitted). McMillan does not argue that the moisture on which she slipped resulted from Walmart's use of the premises. And, as explained in the text, there is no evidence of an unnatural accumulation of water.